1        UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF NEW YORK

2

3 - - - - - - - - - - - - - X
 UNITED STATES OF AMERICA     06-CR-6007(CJS)

4
 vs.

5              Rochester, New York
 RICHARD PETIX,       December 23, 2015

6      Defendant.    10:05 a.m.
 - - - - - - - - - - - - - X

7

8

        TRANSCRIPT OF PROCEEDINGS

9     BEFORE THE HONORABLE MARIAN W. PAYSON
       UNITED STATES MAGISTRATE JUDGE

10

11

        WILLIAM J. HOCHUL, JR., ESQ.

12       United States Attorney
        BY: RICHARD RESNICK, ESQ.

13       Assistant United States Attorney
        6200 Federal Building

14       Rochester, New York 14614

15

        MICHAEL D. FLOWERDAY, ESQ.

16       277 Pond View Heights
        Rochester, New York 14612

17       Appearing on behalf of the Defendant

18

 ALSO PRESENT:   Ivette Hernandez, U.S. Probation Office

19
 AUDIO RECORDER:  Catherine A. Marr

20

21 TRANSCRIBER:   Christi A. Macri, FAPR-CRR
        Kenneth B. Keating Federal Building

22       100 State Street, Room 2120
        Rochester, New York 14614

23

24

25 (Proceedings recorded by electronic sound recording,
 transcript produced by computer).

# P R O C E E D I N G S

* * *

(**WHEREUPON**, the defendant is present).

**MAGISTRATE JUDGE PAYSON:**  Good morning.  Please be seated.

**THE CLERK:** United States of America vs. Richard Petix, 06-CR-6007.

**MAGISTRATE JUDGE PAYSON:**  Counsel, note your appearances for the record, please.

**MR. FLOWERDAY:** Mike Flowerday on behalf of Richard Petix.

**MAGISTRATE JUDGE PAYSON:**  Mr. Flowerday.

**MR. RESNICK:** Richard Resnick on behalf of the Government.

**MAGISTRATE JUDGE PAYSON:**  Okay, Mr. Resnick.

All right, my understanding is that Mr. Petix has two matters proceeding.  One, a violation of supervised release, a matter pending before Judge Siragusa.  And my review of the docket indicates that Mr. Petix made an initial appearance on that matter and that Judge Siragusa has scheduled the matter for a further proceeding some time in January .

And that there is a separate proceeding that is pending by indictment in the Western District, but in Buffalo, and that there was a detention hearing that was held on that

1 matter, I think the day before yesterday.

2           Judge Scott understood that Mr. Petix was being

3 held by Judge Siragusa, so he deferred making a decision.

4 Judge Siragusa, evidently, was deferring to Judge Scott.

5           Judge Siragusa is out of the district, so in view

6 of that, a third judge, that is me, has been asked to come in

7 and conduct a detention hearing for Judge Siragusa.

8           So here we are.   I am certainly happy to conduct

9 the detention hearing.   I will note that unlike the hearing

10 before Judge Scott, pursuant to Federal Rule of Criminal

11 Procedure 32.1(a)(6), the burden is on the defendant to

12 establish by clear and convincing evidence that he will not

13 flee or pose a danger to any person or the community.

14           It is not the Government's burden, and that the

15 standard is clear and convincing evidence both as to

16 dangerousness and risk of flight.

17           **MR. FLOWERDAY:** Your Honor --

18           **MAGISTRATE JUDGE PAYSON:**  And you need to talk into

19 a microphone.   Why don't you come up to the podium?

20           **MR. FLOWERDAY:** With all due respect, I don't know

21 that that's an accurate recitation of what happened in Buffalo

22 having been --

23           **MAGISTRATE JUDGE PAYSON:**  Okay, I don't know that

24 it matters because that's not my case, right?  This is --

25 this -- this is the supervised release.

1          You, as I understand it, asked Judge Siragusa's

2    chambers, for him to render a decision with respect to release

3    or detention with respect to the supervised release matter,

4    correct?

5          **MR. FLOWERDAY:** Your Honor, my understanding was

6    that we were to have a detention hearing here today and it was

7    the People's burden here to proceed or to demonstrate that

8    there was a risk of flight.  That's the theory.

9          We did not have a hearing, a detention hearing --

10          **MAGISTRATE JUDGE PAYSON:**  Okay, Judge Scott has his

11    case.  Whatever -- whatever request you have for Judge Scott

12    you can make to Judge Scott.

13          There is a supervised release petition that's

14    pending before Judge Siragusa.  My understanding is that --

15    that your office called Judge Siragusa's chambers and asked

16    Judge Siragusa to make a decision with respect to release or

17    detention on his case.

18          That's the supervised release petition, you know,

19    you can correct me if I'm wrong, and, Mr. Resnick, I'll look

20    to you, but it seems clear to me pursuant to the Federal Rules

21    of Criminal Procedure 32.1(a)(6), which is a rule that I've

22    been previously familiar with, that the burden is different

23    with respect to a matter that is newly initiated versus a

24    supervised release violation.

25          Mr. Resnick, do I read that rule correctly?

**MR. RESNICK:** Yes, Your Honor.   That rule refers to 3143(a)(1) --

**THE CLERK:** Mr. Resnick, I need you to speak into the microphone.

**MAGISTRATE JUDGE PAYSON:**  Why don't you come up to the podium, too?

**MR. RESNICK:** That rule --

**MAGISTRATE JUDGE PAYSON:**  I'm sorry.

**MR. RESNICK:** 3143(a)(1), which I believe also refers to the burden being on the defendant to establish by clear and convincing evidence.

**MR. FLOWERDAY:** If I may, Your Honor?

**MAGISTRATE JUDGE PAYSON:**  Yes.

**MR. FLOWERDAY:** My understanding of Judge Scott's order was that he was transferring the hearing to Judge Siragusa and we're proceeding under 3241.

**MAGISTRATE JUDGE PAYSON:**  Okay, I'm prepared to go forward with respect to Judge Siragusa's matter.

Judge Scott has not asked me to handle that.   I don't know -- I mean, I'm happy to get him on the phone.  That would be a very unusual procedure.

I talked to Judge Scott yesterday.   If you want to ask him to render a decision, I think you can do that. You've had a hearing before him, I'm not --

**MR. FLOWERDAY:** But we haven't had a hearing, Your

1   Honor, with all due respect.

2            **MAGISTRATE JUDGE PAYSON:**  Okay.

3            **MR. RESNICK:** If I may just tell you what I was

4   advised by --

5            **MAGISTRATE JUDGE PAYSON:**  Tell you what.  Let me

6   see if I can get Judge Scott on the phone, we can plug him in

7   by phone and see what he wants to do.

8            (**WHEREUPON**, there was a pause in the proceeding.)

9            **MAGISTRATE JUDGE PAYSON:**  I did confer with Judge

10  Scott again who confirmed for me his understanding that the

11  detention hearing certainly began before Judge Scott; that he

12  did not render a decision on the detention hearing, deferred

13  the matter to Judge Siragusa, I think expecting that if

14  Judge Siragusa ultimately decided that Mr. Petix were going to

15  be detained on the supervised release violation, then setting

16  release conditions in the other case was, frankly, academic.

17           And then he -- well, he had no knowledge of what I

18  understood yesterday, which is that Mr. Petix's counsel then

19  contacted Judge Siragusa's chambers and said that Mr. Petix

20  didn't want to wait until Judge Siragusa came back in

21  January to render a decision with respect to release or

22  detention on the supervised release petition.

23           Judge Siragusa asked me to handle it and I'm here

24  prepared to handle it.  And it seemed to me prudent before we

25  began to simply place on the record that since it's an issue

of release or detention on a supervised release matter,

meaning that the defendant has pled guilty and been sentenced

on a case, that the burden is different than it is with

respect to a prosecution that's been initiated against a

defendant where there has been no finding of guilt.

I didn't want anybody to be confused that in terms

of my deciding whether there are release conditions that could

be set, I would be judging that determination by the rules set

forth in 32.1(a)(6), that is, that it is a determination to

make by clear and convincing evidence and that the burden

rests with the defendant.

So I am prepared to go forward with respect to a

hearing on release or detention on Judge Siragusa's supervised

release petition.

If you have any application to Judge Scott with

respect to the matters there, you're certainly free to make it

to Judge Scott, but I'm not handling Judge Scott's case.

So, Mr. Flowerday, what would you like to do?

**MR. FLOWERDAY:** Your Honor, if we could proceed,

please, on the basis set forth by the Court.

**MAGISTRATE JUDGE PAYSON:** All right, let's go then.

**MR. FLOWERDAY:** Your Honor, at this time I would

like to call Louis Petix and offer him as a -- as evidence.

**MAGISTRATE JUDGE PAYSON:** All right.

**DEFENDANT'S WITNESS, LOUIS PETIX, SWORN**

<u>**DIRECT EXAMINATION**</u>

**THE CLERK:** Thank you.  Please be seated.  When you are seated, please state your full name and spell your last name for the record.

**THE WITNESS:** My full name is Louis Petix, P-E-T-I-X.

**MAGISTRATE JUDGE PAYSON:**  All right, you may proceed.

**MR. FLOWERDAY:** Thank you, Your Honor.

BY MR. FLOWERDAY:

Q.    Mr. Petix, do you know Richard Petix?

A.    He's my son.

Q.    And how old is he?

A.    He is -- he was born in 1985, January 13th, 1985.

Q.    And to the best of your knowledge, has he always resided here in Rochester?

A.    Yes.

Q.    And do you know where he presently resides?

A.    Well, he's in Steuben County Jail right now, but, I mean, his last residence was 73 Virginia Manor Road, Rochester, New York.

Q.    And is that a house or apartment?

A.    It's a house.

Q.    And do you know how long he's resided there?

A.    All his life.

1  Q.   And do you know whether he lives with anyone at that

2  residence presently?

3  A.   He lives with his girlfriend Brittany and his two -- and

4  two children.

5  Q.   And their ages?

6  A.   The children are Alana is 8 and I believe Brittany -- or

7  Sabrina is 7.

8  Q.   And to the best of your knowledge, do you know where he's

9  employed?

10 A.   He's employed -- I employ him.

11 Q.   And how long has he been in your employ?

12 A.   Since he was released from prison, approximately five

13 years.

14 Q.   And before he was in prison do you know where he worked?

15 A.   He -- well, he -- he picked up odd jobs.  He would

16 occasionally work for me.

17 Q.   Okay. And does he work for you full time?

18 A.   Yes.

19 Q.   Monday through Friday?

20 A.   Yes.

21 Q.   And as a result of his employment within your business, do

22 you see him frequently?

23 A.   Every day.

24 Q.   Okay. And at this time do you own any property?

25 A.   We have a condo, it's in my wife's name.

1  Q.    And where is that condo located?

2  A.    131 Jordache Lane, Spencerport, New York, 14559.

3  Q.    And do you have an approximate value for that condo?

4  A.    Approximately $90,000.

5  Q.    And are you willing to pledge that property?

6  A.    Yes.

7  Q.    And the Virginia Manor property, who is that owned by?

8  A.    That's owned by my mother.

9  Q.    And is Mr. Petix staying there with the permission of your

10  mother?

11  A.    Yes.

12  Q.    And so are there other family members here in the area?

13  A.    Oh, yes, sure.   His brother, my aunts, uncles, cousins

14  all live in the Rochester area.

15  Q.    Do you know whether Mr. Petix has ever traveled outside of

16  the United States?

17  A.    He may have been -- I took him to Canada as a child, but

18  other than that I don't believe he's traveled outside of the

19  United States.

20  Q.    Do you know whether he has a passport?

21  A.    He doesn't.

22  Q.    And how do you know that?

23  A.    Well, I don't -- I believe it was -- I don't think it was

24  discussed, but, I mean, he had mentioned going to Canada and

25  we talked about the new rules and regulations and he said he

1  didn't have a passport.

2  Q.   Okay. And has Richard been reliable and consistent in

3  his -- not only his attendance at work, but his performance at

4  work?

5  A.   Yes.

6  Q.   Have you -- do you have any reason to believe or suspect

7  that he's engaged in the consumption or at this point abusing

8  either drugs and/or alcohol?

9  A.   No.

10  Q.   And, again, are you willing to post bail or bond in this

11  matter on behalf of your son?

12  A.   Yes.

13  Q.   And you do so knowing that if, in fact, he was to flee

14  that that bail or bond might be forfeited?

15  A.   Sure, I understand that.   I don't see any risk.

16           **MR. FLOWERDAY:** I have nothing further of this

17  witness, Your Honor.

18           **MAGISTRATE JUDGE PAYSON:**  Thank you, you may step

19  down.   Oh, I'm sorry.

20           Mr. Resnick, go ahead.   No questions?

21           Let me ask -- Mr. Petix, what do you do?

22           **THE WITNESS:** Well, we're in the beverage business.

23  It's beer, soda, drive up service.

24           **MAGISTRATE JUDGE PAYSON:**  Okay.   Do you own a

25  store?  Are you a distributor?

1          **THE WITNESS:** Yes, I own a store.

2          **MAGISTRATE JUDGE PAYSON:** Okay.  What's the name

3 of the store?

4          **THE WITNESS:** Well, it started as a deli, so it's

5 still under the name of L.P. Deli, but everybody calls it the

6 beverage center.

7          **MAGISTRATE JUDGE PAYSON:** Okay.  And where is

8 that?

9          **THE WITNESS:** 2240 Long Pond Road.

10          **MAGISTRATE JUDGE PAYSON:** You referred to property

11 in your wife's name.  Is that Mr. Petix, Richard Petix's

12 mother?

13          **THE WITNESS:** No, it's not.  It's my second

14 marriage.

15          **MAGISTRATE JUDGE PAYSON:** Okay.  Do you have any

16 mortgages or liens on the condo?

17          **THE WITNESS:** No.

18          **MAGISTRATE JUDGE PAYSON:** Do you know if your

19 mother would be willing to post her home at Virginia Manor?

20          **THE WITNESS:** I'm assuming she would, but I

21 couldn't --

22          **MAGISTRATE JUDGE PAYSON:** You haven't asked her?

23          **THE WITNESS:** I haven't asked her.  In fact, we were

24 kind of hoping that he could be released by Christmas so we

25 wouldn't -- she's 99 years old.  She would be very upset by

1  this whole...

2              **MAGISTRATE JUDGE PAYSON:**  Thank you.

3              **MR. RESNICK:** Just ask a couple questions.

4              **MAGISTRATE JUDGE PAYSON:**  Go ahead.

5                     <u>**CROSS-EXAMINATION**</u>

6  **BY MR. RESNICK:**

7  Q.   You said your son doesn't -- you have no knowledge of any

8  drug use?

9  A.   No, I don't.

10 Q.   Do you have any knowledge of him using Adderall or buying

11 Adderall?

12 A.   No.

13 Q.   Okay. How about any -- any information about him buying or

14 selling bitcoins?

15 A.   He had talked to me about bitcoins and was trying to get

16 me interested.   He said it was a good investment, but other

17 than that I don't know what he did --

18 Q.   Okay.

19 A.   -- for himself or...

20 Q.   You're aware obviously that he was convicted of child

21 pornography --

22 A.   Yes.

23 Q.   -- conviction and he went to jail for that?

24 A.   Yes.

25 Q.   Now, he's on release and one of his conditions is that

1   he's not supposed to have access to unmonitored or not --

2   without Probation's knowledge of computers and, you know,

3   laptops and phones with text messaging and all that.

4           Are you aware of all that?

5   A.   Yes.

6   Q.   Have you been to his house?

7   A.   Yes.

8   Q.   Did you see computers and things of that nature there?

9   A.   No.

10  Q.   Okay. So you weren't aware that when he got arrested that

11  he had -- he was in the process of using a computer, he had

12  thumb drives in his car, and his wife admitted that those

13  items belonged to him?

14          And you had never seen those items?

15  A.   No.

16  Q.   Okay.

17  A.   No, I have no knowledge of that.

18  Q.   Okay. So he never told you that he was using computers or

19  thumb drives or -

20  A.   No.

21  Q.   -- laptop?

22  A.   No, we had -- we had discussed, I mean, as part of my

23  business, I mean, you can't run a business without a computer.

24  And I had discussed with his probation officer probably if he

25  could do something with computers so he could be, you know,

1  more -- more a part of the business and learn the business.

2  Q.   At your location?

3  A.   At my location, but nothing ever became of that.   So to

4  my knowledge, there were no computers that I knew about.

5  Q.   Okay. So if he was using computers and laptops and thumb

6  drives without your knowledge, he wasn't being truthful with

7  you?

8  A.   Well --

9  Q.   I believe that's --

10 A.   -- I mean, I never specifically asked him are you using a

11 computer.

12 Q.   But you knew that was a condition of his release?

13 A.   Yes.

14 Q.   Okay. So --

15 A.   Yes.   I mean, I didn't -- I had no suspicion of why --

16 him using a computer.   So I never questioned him on it so...

17 Q.   Because you thought he wasn't?

18 A.   Because I thought he wasn't.

19 Q.   And if he was, then he obviously wasn't being truthful

20 with you and telling you that he was using computers

21 without --

22         **MAGISTRATE JUDGE PAYSON:**  That's all right, I don't

23 need him to answer that question.

24         **MR. RESNICK:** Okay, I have no other questions.

25         **MAGISTRATE JUDGE PAYSON:**  Okay, thank you, you may

1  step down.   You didn't have any redirect?

2          **MR. FLOWERDAY:** No, thank you.

3          **MAGISTRATE JUDGE PAYSON:**  Okay, thank you.

4          (**WHEREUPON**, the witness was excused).

5          **MAGISTRATE JUDGE PAYSON:**  Mr. Flowerday, did you

6  have any other witnesses?

7          **MR. FLOWERDAY:** Your Honor, I don't have any other

8  witnesses.  However, I would ask the Court to take into

9  consideration the Pretrial Services report of December 18th.

10          **MAGISTRATE JUDGE PAYSON:**  Well, then somebody has

11  to give that to me because that was in Judge Scott's case and

12  I don't have that.

13          **MR. RESNICK:** I don't have that.

14          **MAGISTRATE JUDGE PAYSON:**  Do you have it?

15          **MR. FLOWERDAY:** I do.

16          **MAGISTRATE JUDGE PAYSON:**  All right, so you're

17  asking me to consider the information that's contained in this

18  report?

19          **MR. FLOWERDAY:** I am, Your Honor.

20          **MAGISTRATE JUDGE PAYSON:**  Okay, hold on one second.

21          Okay, thank you.

22          **MR. FLOWERDAY:** And if I may, Your Honor?  I do have

23  a current pay stub, as well as a estimate of the value of the

24  property that Mr. Petix testified to as far as...

25          **MAGISTRATE JUDGE PAYSON:**  Okay.   Mr. Resnick, did

1  you want to look at these documents?

2        **MR. RESNICK:** I wouldn't mind looking at the

3  Pretrial Services report.

4        **MAGISTRATE JUDGE PAYSON:** Maybe we could get copies

5  so we can give you back the originals.

6        **MR. FLOWERDAY:** Of course.

7        **MAGISTRATE JUDGE PAYSON:** Mr. Flowerday, anything

8  else you wanted to proffer?

9        **MR. FLOWERDAY:** No, Your Honor.

10        **MAGISTRATE JUDGE PAYSON:** Okay. All right, what

11  specific release conditions are you recommending?

12        **MR. FLOWERDAY:** Your Honor, at this time my client

13  is asking for electronic monitoring, which would allow him not

14  only to continue his responsibilities as a father to his two

15  children and as to his significant other, to his spouse, but

16  also to allow him to continue to earn.

17        Obviously, there are ongoing costs associated with

18  the maintenance and operation of the house and the household.

19  And as -- as his father testified, he is gainfully employed at

20  this time, working full time. And so obviously he needs that

21  income as well.

22        So we are asking that he be electronically

23  monitored.

24        **MAGISTRATE JUDGE PAYSON:** All right. And you're

25  also offering the posting of the condo I assume?

1          **MR. FLOWERDAY:** Yes, Your Honor.

2          **MAGISTRATE JUDGE PAYSON:**  Okay.

3          **MR. FLOWERDAY:** Thank you.

4          **MAGISTRATE JUDGE PAYSON:**  Thank you.   All right,

5   Mr. Resnick?

6          **MR. RESNICK:** Yes, Your Honor.

7          **MAGISTRATE JUDGE PAYSON:**  Whenever you're ready.

8          **MR. RESNICK:** Yes, Your Honor.   Again, the

9   defendant, as you know, has the burden of proof by clear and

10  convincing evidence in this case.

11          The defendant has been indicted, as you know, in

12  Buffalo.   The case is pending.   He's indicted for making

13  false statements to Probation, the very same people he's now

14  trying to say that he can abide by their conditions of release

15  in this case.

16          So he's been indicted for that.

17          **MAGISTRATE JUDGE PAYSON:**  And the false statements

18  being that he had no computers or devices capable of being

19  connected to the internet?  Are those the false statements?

20          **MR. RESNICK:** Those are the false statements he's

21  been indicted for, yes.

22          There's also, it's my understanding, there's a

23  pending investigation going on regarding the illegal sale and

24  purchase of bitcoin.   I don't know anymore than that about

25  that, but I've been advised by the AUSA in Buffalo that that

1  is pending.

2         As you know, the defendant is a -- was convicted of

3  child pornography.   He's a level 2 sex offender.   One of his

4  conditions was not to have any access or unmonitored access to

5  computers and laptops and those things.

6         **MAGISTRATE JUDGE PAYSON:**  Do you know the status?

7  I presume the thumb drives are -- have been searched or in the

8  process of being searched as well as whatever other devices --

9         **MR. RESNICK:** My understanding the only thing that's

10  been searched has been his phone.   That's the only thing that

11  HSI has been able to get into.

12         We have numerous texts which do discuss the sale of

13  bitcoins, and also I was going to mention the purchase and

14  sale of Adderall.   He was caught with Adderall in his car

15  unmarked.   Probation gave it back to him, but there was some

16  pills in his car at the time that they arrested him.

17         With respect to the thumb drives, it's my

18  understanding that they are password protected.   That the

19  defendant has to, under their conditions, cooperate with the

20  Probation Department.   He has not provided the passwords for

21  those devices.

22         I would argue that he's obviously trying to hide

23  something that's on those thumb drives.   Again, he is a level

24  2 sex offender, wasn't supposed to have those thumb drives.

25  They can't get in them as of right now.

1          So to answer your question, they have not analyzed

2     those thumb drives, but they will be once they hopefully can

3     get into them.

4          I was told by Probation that while he was on

5     release he did inquire about using computers and how he would

6     go about having a computer.   Probation advised him that they

7     would have to monitor it and there was a form to fill out, and

8     I think the form was actually sent to him to fill out.   Never

9     got back to them.

10          Was advised that he could have one, but it had to

11    be monitored.   My argument would be that he didn't want it

12    monitored.   He went behind their back to have computers,

13    thumb drives.

14          At the time that he was caught with the computer,

15    he was involved, I believe, allegedly in a transaction of

16    selling bit coms (sic) at a Tim Horton's in the amount of

17    about $13,000.

18          None of that money or the sale of bit coms (sic)

19    bitcoins, bitcoins, excuse me, was ever mentioned on any of

20    his supervised release notations or filings as an additional

21    job or additional access to money.

22          Also, he mentioned in his text message that he has

23    access to a lot more bit coms (sic).   For example, he states

24    here I will buy 100% of your coins always.   I buy 100K plus a

25    week.

1          And he's saying please don't sell your bit coms

2   (sic) -- your bitcoins to anyone else.   I'll buy them.   And

3   he also says there's a lot more where that came from.

4          That's a conversation he's having with someone that

5   he's in the process of doing an exchange or a transaction of

6   bitcoins.

7          So it's my argument here that he has access to a

8   lot of bitcoins and a lot of money that's unaccounted for.

9   Obviously, that's, you know, grounds for, you know, he's

10  saying in his probation report here, the one I just read, that

11  he has no assets to post for bail.

12         If he's legally doing this bitcoin thing, which is

13  indicated by his phone, where is that money?  Why is that

14  money not being disclosed to Probation?

15         Again, why isn't the passwords being disclosed to

16  Probation about the thumb drives?  Is he a danger to the

17  community?  I mean, is there more child porn on there?

18         Again, I'm not saying there's any indication of

19  that, but, again, he is a level 2 sex offender.   He is

20  supposed to provide Probation with access to his computers and

21  those thumb drives.   He has not done so.  Obviously, I would

22  argue that he's hiding something.

23         He's also selling drugs, at least that's what the

24  argument can be made based on his own phone where he said on

25  two occasions he bought 60 pills and then another occasion a

1    day later he bought 100 pills of Adderall, which then can be

2    sold on the market, you know, for the --

3              **MAGISTRATE JUDGE PAYSON:**  Okay, but your contention

4    is that the phone has communications from Mr. Petix that

5    revealed that he purchased 150 pills --

6              **MR. RESNICK:** About 160 pills in a two-day period,

7    which was about a week ago.

8              **MAGISTRATE JUDGE PAYSON:**  Okay, just to be clear

9    then, your contention is that the inference from that is that

10   he's selling those Adderall pills rather than keeping them for

11   his own consumption?  Not that there is a communication --

12             **MR. RESNICK:** Yes.

13             **MAGISTRATE JUDGE PAYSON:**  -- specifically about him

14   selling pills?

15             **MR. RESNICK:** Yes.  And that's why I asked his

16   father -- I believe I asked him if he knew his son took

17   Adderall.

18             **MAGISTRATE JUDGE PAYSON:**  Yes.

19             **MR. RESNICK:** Does his son take Adderall.  Again,

20   there was some Adderall found in the car on the day that they

21   arrested Mr. Petix.

22             So, you know, I would say he is a flight risk based

23   on the unaccounted for money that is indicated in his own text

24   message that he now has not even disclosed to Probation again

25   in his presentence report.

1        I would say that he is a danger to the community

2   based on the fact that he is buying drugs and the only reason

3   you're buying that kind of drugs is to sell those drugs.

4        **MAGISTRATE JUDGE PAYSON:**  Let me ask you with

5   respect to the underlying case that he pled guilty to --

6        **MR. RESNICK:** Yes.

7        **MAGISTRATE JUDGE PAYSON:**  -- did you handle that?

8        **MR. RESNICK:** Yes, I did.

9        **MAGISTRATE JUDGE PAYSON:**  Okay.  What were the

10  circumstances of the child pornography charge to which he pled

11  guilty?

12       Did it involve the use of a computer?

13       **MR. RESNICK:** Yes, I believe it did, yes, Your

14  Honor.  You know, this case was a long time ago.

15       **MAGISTRATE JUDGE PAYSON:**  I know.

16       **MR. RESNICK:** The one thing I do believe is -- I do

17  remember is his father was very involved in that case.   Based

18  on his father's involvement, the Court -- and I believe the

19  Government also -- consented to a, really, reduction in the

20  sentencing guidelines and he ended up only getting 60 months,

21  which was a major break compared to what the guidelines were.

22       **MAGISTRATE JUDGE PAYSON:**  Mm-hmm.

23       **MR. RESNICK:** So I just say that because we kind of

24  have the same situation here where the father's here again

25  vouching for his son.

1          But, again, Your Honor, I mean, how can we trust

2     this defendant on any conditions of release when he's on

3     release for a major crime and all the indications are that he

4     had computer equipment, he was caught using computer

5     equipment, he's been indicted now by a grand jury for lying

6     about that computer equipment.

7          He asked Probation how he could get computer

8     equipment.  He was told it had to be monitored.  Never

9     followed up on it.

10          And he's still denying that that computer equipment

11     is his and he's not giving access to that computer equipment

12     to Probation, like he's supposed to, or now law enforcement.

13          **MR. FLOWERDAY:** If I may, Your Honor?

14          **MAGISTRATE JUDGE PAYSON:**  Hold on.  Mr. Resnick,

15     are you done?

16          **MR. RESNICK:** Yes, I am, Your Honor.

17          **MAGISTRATE JUDGE PAYSON:**  Go ahead, Mr. Flowerday.

18          **MR. FLOWERDAY:** All the documents indicated by

19     Mr. Resnick are presupposed that those phones, computers and

20     such, in fact, are either owned by my client or that he had

21     access to it.

22          My client has steadfastly denied having access or

23     ownership of those computers, which is the reason why he said

24     he couldn't give the passwords or the -- whatever is necessary

25     to allow them to search those because they're not his.

1        **MAGISTRATE JUDGE PAYSON:**  Well, Mr. Resnick -- just

2   go back to the podium so that you're picked up -- Mr. Resnick

3   has proffered that the defendant was arrested while on some

4   device.

5        **MR. RESNICK:** That's what I was advised by

6   Probation.   I wasn't there obviously, but Probation advised

7   me that he was in a Tim Horton's -- maybe you can speak for

8   yourself, I'm sorry.

9        **MS. HERNANDEZ:** Your Honor, when we entered he

10  actually had the laptop opened and he was already in a

11  program.   So it wasn't like he was locked out and he had to

12  put in a password.

13       **MAGISTRATE JUDGE PAYSON:**  Okay.   And then there

14  were thumb drives that were found in a car?

15       **MS. HERNANDEZ:** It was a thumb drive -- my

16  understanding is there was a thumb drive in the laptop and

17  then there were four thumb drives in his bag in the car.

18       **MAGISTRATE JUDGE PAYSON:**  Okay.   And at the time

19  of his arrest he was present with his girlfriend and two

20  children?

21       **MS. HERNANDEZ:** Yes.

22       **MAGISTRATE JUDGE PAYSON:**  Did you say his bag in

23  the car or in the car loose?

24       **MS. HERNANDEZ:** There was -- there was a backpack

25  that, my understanding, belonged to the offender and in that

1   bag there were four thumb drives --

2           **MAGISTRATE JUDGE PAYSON:**  Okay.

3           **MS. HERNANDEZ:** -- in the bag.

4           **MAGISTRATE JUDGE PAYSON:**  So, Mr. Flowerday, I

5   mean, at least that's the Government's proffer.  It may be

6   that evidence develops to the contrary, but that's the

7   Government's proffer.

8           **MR. FLOWERDAY:** If I may as relates to the drugs,

9   Your Honor?  I do have some evidence to the fact that

10  Mr. Petix is -- was prescribed Adderall and he's obtaining it

11  through his insurance company, not through any black market.

12          **MAGISTRATE JUDGE PAYSON:**  All right.  All right,

13  anything else?

14          **MR. FLOWERDAY:** Again, Your Honor, the fact that he

15  may have been seen -- and, again, from what I heard, nobody

16  knows, that that's what has been alleged.  Certainly it's not

17  contained in the indictment those facts or allegations.

18          **MAGISTRATE JUDGE PAYSON:**  No, but I will say that

19  probable -- the indictment does constitute a probable cause

20  finding by a grand jury that those statements were false.

21          So the grand jury has evidently concluded that

22  there is probable cause to believe that he did have access to

23  that equipment.

24          Go ahead, anything else?

25          **MR. FLOWERDAY:** Nothing further, Your Honor.

1          **MR. RESNICK:** Your Honor, may I just comment on this

2     one piece of paper I just got?

3          **MAGISTRATE JUDGE PAYSON:** Yes.

4          **MR. RESNICK:** I mean, it obviously looks like he's

5     getting it from a doctor.  It's something his father doesn't

6     even know about that he's allegedly taking Adderall, but also

7     in addition to the 20 tablets, we do have evidence on his

8     phone where he did purchase -- it says -- it indicates he

9     purchased 60 pills and then 100 pills the next day on the open

10    market, not from a drugstore.

11         **MAGISTRATE JUDGE PAYSON:** Right.  And the

12    prescription at least looks to me to be 2014 is the --

13         **MR. FLOWERDAY:** And, again, Your Honor, in response

14    to that, it's not his phone.  So whatever communications that

15    are on that phone that the People -- I'm sorry, the

16    Government's attributing to him is based on their fact -- or

17    their belief, excuse me, that the phone is his and he's

18    denying the phone is his.

19         **MAGISTRATE JUDGE PAYSON:** Let me hear from

20    Mr. Resnick, if you know, what is the connection between

21    Mr. Petix and the phone?

22         **MR. RESNICK:** Your Honor, I mean, was he caught with

23    the phone?

24         **MS. HERNANDEZ:** The phone was -- when we walked into

25    the store, the phone was right there next to the laptop and

1    texts -- I mean, there's numerous messages between him and his

2    girlfriend, and there are individuals who are saying is this

3    Rick?  And he's like yes, this is Rick.

4            **MAGISTRATE JUDGE PAYSON:**  When you say there's

5    texts that say is this Rick, and he's says this is Rick?

6            **MS. HERNANDEZ:** Yeah.

7            **MR. RESNICK:** And there's discussion about picking

8    up kids, Brittany Nicole Petix is on this phone mentioned.   I

9    don't know if that's his girlfriend --

10           **MAGISTRATE JUDGE PAYSON:**  All right.

11           **MR. RESNICK:** I have all the text messages if the

12   Court would like them, which do reference the defendant's name

13   and --

14           **MAGISTRATE JUDGE PAYSON:**  All right, I'll consider

15   that.   I'm going to reserve.   I'm not setting release

16   conditions today and I will reserve and let you know when I'm

17   prepared to render a decision.

18           **MR. RESNICK:** Thank you.

19           **MR. FLOWERDAY:** Thank you, Your Honor.

20           **MAGISTRATE JUDGE PAYSON:**  Okay.   Let me make a

21   copy before you go of the couple of exhibits and the

22   Pretrial Services report and we'll give these back to you.

23           (**WHEREUPON**, the proceedings adjourned at 10:51 a.m.)

24                          *    *    *

25

1       **CERTIFICATE OF TRANSCRIBER**

2

3              In accordance with 28, U.S.C., 753(b), I certify that

4   this is a true and correct record of proceedings from the

5   official electronic sound recording of the proceedings in the

6   United States District Court for the Western District of New

7   York before the Honorable Marian W. Payson on December 23rd,

8   2015.

9

10  S/ Christi A. Macri

11  Christi A. Macri, FAPR-CRR
    Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25